**Lawrence PETRICCA, Sr., Plaintiff,**

v.

**CITY OF GARDNER et al., Defendants.**

**No. CIV.A.03–40218 NMG.**

United States District Court, D. Massachusetts.

Feb. 28, 2006.

George A. Berman, Marjunette deMagistris, Peabody & Arnold LLP, Boston, MA, Daniel P O'Brien, Posternak, Blankstein & Lund LLP, Boston, MA, for Kopelman & Paige, P.C., Katherine Goree Doyle, Defendants.

Jeremy I. Silverfine, Brody, Hardoon, Perkins & Kesten, LLP, Boston, for City of Gardner, Daniel Kelley, Richard Reynolds, Defendants.

Marjunette deMagistris, Peabody & Arnold LLP, Boston, MA, for Kopelman & Paige, P.C., Katherine Goree Doyle, Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiff, Lawrence Petricca, Sr. ("Petricca"), proceeding *pro se*, filed a civil rights action in September, 2003, against the following defendants: the City of Gardner, Massachusetts ("the City"), its former Mayor, Daniel Kelley ("Mayor Kelley"), its Building Commissioner, Richard Reynolds ("Comm'r Reynolds"), unnamed employees and agents of the City ("John Does 1–20"), a law firm retained by the City, Kopelman & Paige ("the Law Firm"), and an attorney with that firm, Katherine I. Goree Doyle ("Atty Doyle").

Currently pending before the Court are motions filed jointly by the City, Mayor Kelley and Comm'r Reynolds (collectively, "City Defendants") 1) for summary judgment and 2) to strike portions of an affidavit filed by Petricca in opposition to their

motion for summary judgment. The motion to strike will be discussed first because its disposition affects the Court's consideration of the pending dispositive motion.

### I. Background

Petricca alleges that defendants individually, and in concert with one another, deprived him of his rights under the United States and Massachusetts constitutions by means of, *inter alia,* abusing the legal process and making false statements. He further alleges that defendants have engaged in a pattern of violence, intimidation and humiliation against him and his business for 20 years. More specifically, Petricca avers that defendants unjustifiably prevented him from selling properties that he owns, failed to investigate his police complaints or respond to requests for public information and filed unfounded criminal charges against him. Plaintiff's complaint states eight causes of action: federal and state civil rights violations, negligence, conspiracy to interfere with civil rights, breach of the covenant of good faith and fair dealing, malfeasance, malicious prosecution, interference with business relations and malicious abuse of legal process.

Numerous motions have been filed by Petricca during the course of this litigation, most of which have been denied. In October, 2004, the Court referred to Magistrate Judge Swartwood various motions including one seeking summary judgment on behalf of Atty Doyle and the Law Firm in which those defendants contended that plaintiff's claims against them were deficient as a matter of law and without evidentiary support. The Magistrate Judge's Report and Recommendation ("R & R") of January 4, 2005, recommended that this Court allow that motion for summary judgment. No timely opposition to the R & R was filed and this Court accepted and adopted the R & R on January 26, 2005, thereby dismissing the claims against Atty Doyle and the Law Firm.

### II. Motion to Strike Portions of the Affidavit of David Thomas

Fed.R.Civ.P. 56(e) provides that a party may support its motion for summary judgment or opposition thereto with affidavits that are

> made on personal knowledge, ... set forth such facts as would be admissible in evidence, and ... show affirmatively that the affiant is competent to testify to the matters stated therein.

City Defendants contend that portions of an affidavit sworn to by David Thomas ("Thomas"), a real estate broker who was under contract with Petricca and who had various communications with defendants with respect to the instant lawsuit, fail to meet the requirements of Rule 56(e).

In particular, City Defendants request that ¶¶ 7–9, 11, 15–17, 21 and 24 be struck on the grounds that those paragraphs include inadmissible 1) legal arguments and conclusions, 2) unfounded expert opinions and 3) assertions about which Thomas lacks personal knowledge. Petricca disputes those contentions in a filing that fails to address defendants' positions squarely. Rather, he requests that City Defendants' motion be denied on the grounds that a) they failed to confer with him before filing that motion, b) many of Thomas's statements are corroborated by other affidavits and c) the uncorroborated statements nonetheless raise genuine issues of material fact.

After reviewing the portions of the affidavit that City Defendants seek to strike, the Court will deny their motion with respect to ¶ 8 but otherwise allow it. Whereas ¶ 8 reflects the affiant's personal knowledge, ¶¶ 7, 9, 11, 15–17, 21 and 24 either have no basis in the affiant's person-

al knowledge or else state inadmissible legal conclusions.

### III. *Motion for Summary Judgment*

City Defendants have moved for summary judgment with respect to all claims asserted against them. In support thereof, they adopt the statement of material facts that accompanied the motion for summary judgment of Atty Doyle and the Law Firm, adding only a few other facts in support of their own motion. *See LR* 56.1. Because the statement of facts provided by Atty Doyle and the Law Firm concerned only those defendants, it is largely irrelevant to the contentions of City Defendants. Leaving such a paucity of supporting material, the motion of City Defendants for summary judgment is more akin to one for judgment on the pleadings. Petricca opposes that motion in an overlong memorandum that touches only obliquely upon defendants' legal contentions. He does, however, assert numerous facts which City Defendants have not specifically addressed.

### A. Legal Standard

Summary judgment is appropriate where the moving party has shown, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law". *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-movant's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Discussion

### 1. Civil Rights Violations

Petricca has asserted claims under 42 U.S.C. §§ 1983 and 1985 and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I ("MCRA"), in which he contends that defendants infringed his civil rights secured by the federal and Massachusetts constitutions.

### a. § 1983—Against the City

█ The City contends that Petricca cannot maintain a § 1983 action against it because there is no allegation or evidence that he suffered injury caused by its official "policy or custom". *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish a § 1983 claim against the City, Petricca must prove the existence of an unconstitutional municipal policy or a

widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law'.

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion).

■ Because Petricca has proffered no evidence of a municipal custom acquiring the force of law, his § 1983 claim against the City must be based on the existence of unconstitutional municipal policy. The United States Supreme Court has held that policy-based municipal liability may only derive from acts representing a final policymaking decision. *Id.* at 123, 108 S.Ct. 915 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). Thus, plaintiff must demonstrate misconduct performed pursuant to a policy duly adopted by the official or officials in charge of policymaking in that area. *Id.* Where an official's decisionmaking authority is discretionary, any policy which binds that discretion is considered official municipal policy. *Id.* at 127, 108 S.Ct. 915. Where the authority of a subordinate is subject to review and ratified by a policymaking official, that ratification is attributable to the municipality. *Id.*

■ Plaintiff must show, moreover, an "affirmative link" between the City (or its supervisory personnel) and the alleged misconduct by municipal employees. *See Gaudreault v. Municipality of Salem*, 923 F.2d 203, 209 (1st Cir.1990) (citation omitted). Establishing such a link requires proof that "acts or omissions of the municipality's policymakers evidence[d] 'deliberate indifference'" to plaintiff's rights. *Id.* (citing *Canton v. Harris*, 489 U.S. 378, 387–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

In this case, Petricca has offered only the following with respect to the alleged unconstitutional municipal policy: 1) allegations that various City personnel, including Comm'r Reynolds, several building inspectors and the Chief of Police, failed to respond to informational and investigatory requests made by Petricca, 2) allegations that Comm'r Reynolds and other employees of the Building Department gave information to third parties which prevented Petricca from selling properties he owned, 3) allegations that City Defendants have filed criminal complaints against him and 4) reference to a City of Gardner police management study, apparently produced in the mid–1980s, which is critical of the Gardner Police Department. Petricca's claims generally consist of sweeping, conclusory assertions devoid of specific facts or evidence.

Based on the materials provided by Petricca, the Court concludes that he cannot establish a successful § 1983 claim against the City. First, there is no persuasive evidence that any of the alleged misconduct of City officials rises to the level of a constitutional violation and second, there is a complete dearth of evidence linking any alleged misconduct to official City policy.

### b. § 1983—Against Individual Defendants

Comm'r Reynolds and Mayor Kelley dispute any § 1983 liability on the grounds of insufficient evidence and qualified immunity. More specifically, City Defendants state that 1) Mayor Kelley is not referred to in the complaint apart from his denomination as Mayor and 2) actions attributable to Comm'r Reynolds fail to support claims of civil rights violations.

■ The alleged liability of Comm'r Reynolds and Mayor Kelley must be based upon their own acts or omissions, demonstrated through "direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization". *Whitfield v. Melendez–Rivera*, 431 F.3d 1, 14 (1st Cir.2005) (citation omitted). Without evidence of direct

participation, the liability of a public official requires proof that 1) his subordinate(s) violated the plaintiff's constitutional rights and 2) there is an affirmative link between the subordinate(s)' behavior and the action or inaction of their supervisor. *Id.* (characterizing such a link as "supervisory encouragement, condonation or acquiescence" or "gross negligence ... amounting to deliberate indifference") (citation and internal quotation marks omitted).

■ In this case, there is no evidence that Mayor Kelley directly participated in any unconstitutional conduct. Consequently, his liability as Mayor may be established only where his own acts or omissions constituted "reckless" or "callous indifference" to Petricca's constitutional rights. *Gaudreault*, 923 F.2d at 209 (citation omitted). As noted above, the complaint in this case provides no link between Mayor Kelley and any alleged misconduct. Moreover, other pleadings filed by Petricca refer to Mayor Kelley only to the extent that he was purportedly sent copies of correspondence from plaintiff to various City employees. That being the sole evidentiary basis on which any liability of Mayor Kelley is based, the Court will dismiss not only the § 1983 claim but all of Petricca's claims against him.

■ With respect to Comm'r Reynolds, § 1983 liability may attach only where no qualified immunity defense is available. The doctrine of qualified immunity provides a safe harbor for government officials whose conduct would otherwise render them liable for constitutional violations. *See Whitfield*, 431 F.3d at 6 (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). A public official is immune from § 1983 claims

*unless* the facts establish that [his] conduct violated a constitutional right that was "clearly established" at the time of the violation such that a reasonable officer would have known that the conduct at issue was unlawful.

*Id.* (citation omitted).

Here, Petricca has alleged violations of rights secured by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. Construing the alleged facts in a light most favorable to him, the Court fails, nonetheless, to ascertain any inference of constitutional violations from those facts. Petricca provides no evidence that his freedom of speech was curtailed, that he was subject to any unlawful searches or seizures or that his alleged injuries amount to a constitutional infringement of due process or equal protection. Consequently, the Court will award summary judgment to Comm'r Reynolds on the § 1983 claim.

### c. § 1985

■ To establish a claim under 42 U.S.C. § 1985 for conspiracy to interfere with civil rights, the plaintiff must demonstrate the existence of 1) a conspiracy 2) motivated by class-based, invidiously discriminatory animus 3) whose purpose was to deprive the plaintiff of equal protection or equal privileges and immunities under the law and that 4) an overt act in furtherance of the conspiracy was performed resulting in 5) injury or the deprivation of a constitutional right or privilege. *See Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). *See also Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

City Defendants maintain that plaintiff has failed to state an actionable § 1985 claim because there is no allegation of discriminatory intent. Petricca responds that a showing of class-based animus is not

legally required, citing *Selzer v. Berkowitz,* 459 F.Supp. 347 (S.D.N.Y.1978). The principle in *Selzer* upon which plaintiff relies has, however, been uniformly rejected. *See Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994); *Petrone v. City of Reading,* 541 F.Supp. 735, 740–41 (E.D.Pa.1982) (citing cases contrary to *Selzer*); *Puglisi v. Underhill Park Taxpayer Ass'n,* 947 F.Supp. 673, 690–91 (S.D.N.Y. 1996) (same). Thus, the Court will dismiss his § 1985 claim for conspiracy to interfere with civil rights against all defendants.

### d. Massachusetts

Claims under the MCRA are generally coextensive with § 1983 claims except that 1) there is no state action requirement, 2) violations require proof of threats, intimidation or coercion and 3) municipalities are not potentially liable "persons" under the act. *See Kelley v. LaForce,* 288 F.3d 1, 10–11 & n. 9 (1st Cir.2002) (citations omitted).

City Defendants assert, correctly, that Petricca has no MCRA claim against the City. They contend further that claims against the individual defendants must fail because there is no evidence that those defendants threatened, intimidated or coerced plaintiff. The Court concurs with the position of City Defendants because Petricca has provided no evidence of threats, intimidation or harassment apart from wholly conclusory assertions. That he or his agents subjectively felt fearful or intimidated is not a sufficient factual basis to maintain a viable MCRA claim.

### 2. Negligence; Malfeasance

The Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258 ("MTCA" or "Chapter 258"), makes public employers liable for injuries "caused by the negligent or wrongful act or omission of any public employee while acting within the scope of

his office or employment". Ch. 258, § 2. The remedies provided under the MTCA are

> exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer or, [sic] the public employee ... whose negligent or wrongful act or omission gave rise to such claim, and no such public employee ... shall be liable for any injury ... caused by his negligent or wrongful act or omission while acting within the scope of his office or employment ...

*Id.* The act, therefore, shields such employees from liability for negligent acts performed within the scope of their employment.

 As an initial matter, the Court finds that the negligence and malfeasance claims against Comm'r Reynolds are unsustainable under the MTCA. His alleged misconduct, i.e., communicating with various persons about the status of Petricca's properties, supervising employees of the City Building Department and testifying with respect to a housing complaint against Petricca, unquestionably rest within the scope of his office.

The Court reaches the opposite conclusion, however, with respect to the City itself. City Defendants contend that the "discretionary function exception" of the MTCA defeats all of plaintiff's negligence and malfeasance claims against them. That exception precludes liability that is

> based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused.

*Id.,* § 10(b).

 The Court finds the discretionary function exception inapplicable on the

basis of the present record. Under Massachusetts law, a function is not discretionary where its exercise is dictated by statute. *Harry Stoller & Co., Inc. v. City of Lowell,* 412 Mass. 139, 587 N.E.2d 780, 782 (1992) ("Quite obviously, if the governmental actor had no discretion because a course·of action was prescribed by statute, regulation, or established agency practice, a discretionary function exception to governmental liability has no role to play in deciding the case."). In this case, Petricca has alleged that various City employees failed to respond to his requests for information made pursuant to the Massachusetts statute governing access to public records, Mass. Gen. Laws ch. 66, § 10(a).[1] Apart from the assertion that City employees were acting with discretion, City Defendants have offered no evidence in support of their motion for summary judgment on the negligence or malfeasance counts. Weighed against the factual allegations of Petricca, the Court finds that City Defendants have failed to meet their burden of establishing the appropriateness of summary judgment on the negligence and malfeasance claims against the City. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Fed.R.Civ.P. 56(e) advisory committee's note (1963 amendment) ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.").

### 3. Breach of the Covenant of Good Faith and Fair Dealing

█ Although City Defendants have not specifically addressed plaintiff's claim for breach of the covenant of good faith

and fair dealing apart from their general arguments relating to negligent and intentional torts, the Court concludes, nevertheless, that Petricca has failed to state an actionable claim. The duty of good faith and fair dealing derives from contract. *See Lafayette Place Assocs. v. Boston Redevelopment Auth.,* 427 Mass. 509, 694 N.E.2d 820, 830 (1998) (citation omitted). A breach of that duty exists only where there is an enforceable contract between the parties. *See Petricca v. City of Gardner,* 194 F.Supp.2d 1, 5 (D.Mass.2002) (citing *Bateman v. Fed. Deposit Ins. Corp.,* 112 F.Supp.2d 89, 97 (D.Mass.2000)). Here, there is no evidence of any contractual relationship between Petricca and any of the defendants. Consequently, his claim for breach of the covenant of good faith and fair dealing fails as a matter of law.

### 4. Intentional Torts

█ The Court agrees with City Defendants that the MTCA precludes the imposition of liability against the City on Petricca's claims of malicious prosecution, interference with business relations and malicious abuse of legal process. *See Molinaro v. Town of Northbridge,* 419 Mass. 278, 643 N.E.2d 1043, 1044 (1995). Section 10 of the MTCA protects public employers from being held liable for

> any claim arising out of an intentional tort, including ... malicious prosecution, malicious abuse of process, ... interference with advantageous relations or interference with contractual relations.

The Court is not, however, similarly persuaded on behalf of Comm'r Reynolds. City Defendants contend that he is entitled to summary judgment because there is insufficient evidence against him and by

---

1. Petricca asserts that City employees also contravened the federal Freedom of Information Act, 5 U.S.C. § 552, but that statute does not apply to municipalities. *See, e.g., Philip Morris, Inc. v. Harshbarger,* 122 F.3d 58, 83 (1st Cir.1997).

operation of the MTCA's "discretionary function exception", described in greater detail in Section B.2, above.

A successful claim for malicious prosecution requires proof that criminal proceedings were instituted against the plaintiff with malice and without probable cause and that those proceedings terminated in his favor. *Correllas v. Viveiros,* 410 Mass. 314, 572 N.E.2d 7, 10 (1991) (citation omitted). An abuse of process claim requires demonstration that legal process was used for an illegitimate purpose thereby causing harm. *Gutierrez v. Mass. Bay Transp. Auth.,* 437 Mass. 396, 772 N.E.2d 552, 563 (2002) (citation omitted). The two claims are related though not identical. *See, e.g., Heck v. Humphrey,* 512 U.S. 477, 484–86, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Simon v. Navon,* 71 F.3d 9, 15 (1st Cir.1995).

It is undisputed that a criminal complaint was filed, and later dismissed, against Petricca in the Worcester Housing Court. Even though that complaint was officially brought by the City, Petricca may nonetheless state a claim for malicious prosecution against Comm'r Reynolds individually if Reynolds, in fact, promoted the institution of the criminal charge. *See Correllas,* 572 N.E.2d at 10. In this case, Petricca alleges that Comm'r Reynolds made knowingly false statements about him under oath in support of the criminal complaint. Because City Defendants have provided no specific evidence to rebut that assertion, the Court will deny summary judgment to Comm'r Reynolds on the malicious prosecution and abuse of process claims.

To establish a claim for tortious interference with advantageous business relations, the plaintiff must prove that he had a business relationship with a third party with which the defendant knowingly interfered through an improper motive or means thereby causing him harm. *Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.,* 62 Mass.App.Ct. 34, 815 N.E.2d 241, 245 (2004) (citing *United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 551 N.E.2d 20 (1990)). Here, plaintiff alleges that Comm'r Reynolds and other City employees gave information to prospective purchasers of plaintiff's property and to his real estate agent, Thomas, each of whom had contracts with Petricca, that thwarted consummation of the sales of two properties. Specifically, Comm'r Reynolds is alleged to have informed a prospective buyer and the broker (Thomas) that a particular property could not be sold by Petricca. An unnamed City employee is alleged to have provided a separate prospective purchaser with outdated notices of Housing Code violations on another piece of property. Neither property was sold after those communications and Thomas did not renew his brokerage contract with Petricca.

Comm'r Reynolds disputes liability for tortious interference on the grounds that there is insufficient evidence that the foregoing communications were untruthful or motivated by ill will. Petricca responds that public documents demonstrate the falsehood of Reynolds' statements and his improper motive can be inferred from the evidence. Viewed within the framework of a motion for summary judgment, the Court agrees with Petricca that awarding summary judgment to Comm'r Reynolds on the tortious interference claim would be inappropriate.

The Court also finds that the MTCA's discretionary function exception does not protect Comm'r Reynolds from the intentional tort claims asserted against him because there is insufficient evidence that his conduct was discretionary.

226

## ORDER

In accordance with the foregoing,

1) City Defendants' Motion to Strike Portions of the David Thomas Affidavit (Docket No. 80) is, with respect to ¶ 8, **DENIED** and is otherwise (with respect to ¶¶ 7, 9, 11, 15–17, 21 and 24) **ALLOWED**.

2) City Defendants' Motion for Summary Judgment (Docket No. 75) is:

 a) with respect to all claims asserted against Mayor Kelley, **ALLOWED**,

 b) with respect to claims against all City Defendants pursuant to i) § 1983, ii) § 1985, iii) violations of the Massachusetts Civil Rights Act and iv) breach of the covenant of good faith and fair dealing, **ALLOWED**,

 c) with respect to claims against the City for i) malicious prosecution, ii) interference with business relations and iii) abuse of legal process, **ALLOWED**, but

 d) with respect to claims against the City for i) negligence and ii) malfeasance, **DENIED**, and

 e) with respect to claims against Comm'r Reynolds for i) negligence, ii) malfeasance, iii) malicious prosecution, iv) interference with business relations and v) abuse of legal process, **DENIED**.

**So ordered.**